Leo WILHELM and Nedalyn Wilhelm,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Rubie K. DOVER, Executrix, Estate of
W. E. Dover, Deceased, and Rubie
K. Dover, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. Nos. 4938, 4939.

United States District Court
D. Wyoming.

Aug. 18, 1966.

Arthur Kline, of Kline & Tilker, Cheyenne, Wyo., and Lorin Guild, Wheatland, Wyo., for plaintiffs.

Robert N. Chaffin, U. S. Atty. for Dist. of Wyoming, Cheyenne, Wyo., and Lawrence E. Doxsee, Dept. of Justice, Tax Div., Washington, D. C., for defendant.

Judge's Memorandum.

KERR, District Judge.

The above-captioned cases involving the same facts and issues under Subchapter S, Sections 61, 119, 162 and 167 of the Internal Revenue Code of 1954, were consolidated for trial to facilitate the disposition of the questions before the Court. In civil action No. 4938 the plaintiffs-taxpayers seek a refund of income taxes and interest for 1961 in the amount of $600.13. In civil action No. 4939, the plaintiffs-taxpayers seek a refund of income taxes and interest in the amount of $633.46. Jurisdiction is conferred upon this Court by 28 U.S.C. Sections 1340 and 1346(a) (1). W. E. Dover died on July 27, 1964, and Letters Testamentary were issued to Rubie K. Dover, who is the duly qualified and acting Executrix of the Estate of W. E. Dover, deceased.

The stipulation of facts to which the parties agreed and the evidence at the trial show that there are no material differences concerning the ranching business of the plaintiffs. Prior to August 1960, W. E. Dover and Rubie K. Dover owned ranch lands in Platte and Albany Counties in Wyoming. Approximately 16,500 acres were deeded land and approximately 8,500 acres were in State and Taylor Grazing Act leases. The lands in Albany County were used principally by all the plaintiffs for summer pasture. The lands in Platte County consisted of two separate units, the Home Place, where the Dovers had lived since 1921, and the Brush Creek Ranch.

Prior to 1960 plaintiffs were attempting to operate from the Home Ranch and to winter cattle on the Brush Creek Ranch. Such operation was found not to be feasible due to the loss incurred. They decided that if they were to use the grass on the Brush Creek Ranch they would need responsible people who were willing and sufficiently experienced to run a grass ranch and who would move on it and live there. Early in 1960 the Dovers gave 1,839.32 acres of the Brush Creek Ranch lands to their daughter and son-in-law, the Wilhelms. Deciding to change their operation to utilize the Brush Creek Ranch profitably, the Wilhelms thereupon sold their 240 acre farm in Platte County and with $27,000.-00 of the selling price, they built a residence and other buildings on the Brush Creek Ranch. In the tax year ended 1961, Mr. and Mrs. Wilhelm lived there and both actively operated the Brush Creek Ranch.

On August 5, 1960, the plaintiffs incorporated the "Thirty-One Bar Ranch Company" and on August 8, 1960, they transferred all of their buildings and their lands, deeded and leased, to the corporation in exchange for its common stock. On that same day the corporation filed its election under Section 1372(a) of the Internal Revenue Code of 1954 as amended, to have its income taxed directly to its shareholders, all of its shareholders duly consenting to said election. The livestock and equipment owned by the Dovers and Wilhelms were transferred to the corporation on January 2, 1961, in exchange for more common

stock. All shares of the corporation were owned by the Dovers and Wilhelms.

Thereafter the ranching business was run by the Thirty-One Bar Ranch Company, Incorporated. It hired W. E. Dover as general manager, and Leo Wilhelm as assistant manager at a monthly salary of $400.00 each. In 1961, the Dovers were paid $5,074.69 cash as salary, and the Wilhelms $4,944.00 cash. The corporation claimed a net operating loss in 1961 of $3,238.97. The Dovers and Wilhelms each duly filed their 1961 Federal Income Tax returns, reporting their respective cash salaries from the corporation, and claiming their respective shares of the net operating loss of the corporation for 1961. The corporation also filed its 1961 Federal Income Tax return, which was audited in 1963 by the Internal Revenue Service and certain items were disallowed.

There was one full time employee other than the Dovers and Wilhelms and extra employees were hired for roundups, haying and other peak work periods. The Government allocated certain expenses and depreciation to the employees who were not shareholders of the corporation and allowed said expenses as deductions from the corporation's income. The following table shows the deductions claimed by the corporation and the amounts allowed and disallowed by the Government:

| Items | Deduction Claimed | Deduction Allowed | Amount Disallowed |
|---|---|---|---|
| Utilities and 'phone | $1,326.45 | $ 663.23 | $ 663.22 |
| Board of labor | 3,174.43 | 500.00 | 2,674.43 |
| Gas and oil for all vehicles owned by the corporation | 1,506.21 | 1,129.66 | 376.55 |
| Depreciation, Tenant) house, Home Place, ) $1,050.00 ) ) Depreciation, Tenant) house, Brush Creek ) $1,350.00 ) | 2,400.00 | 287.50 | 2,112.50 |
| Depreciation, car | 326.40 | 0.00 | 326.40. |

The total amount of deductions disallowed to the corporation by the Government, namely, $6,153.10, was apportioned according to the shares of stock owned by the shareholders. That is, 52.789%, or $3,248.16, of the corporation's deductions disallowed was added to the Dover's 1961 personal income, and 47.211%, or $2,904.94, of the corporation's deductions disallowed was added to the Wilhelm's personal income. On July 2, 1963, additional income tax of $616.13 and interest of $45.66 was assessed against the Dovers, and additional income tax of $558.73 and interest of $41.40 was assessed against the Wilhelms. Said additional tax assessments and interest were timely paid and taxpayers' claims for refunds were duly filed. The disallowance of their claims was mailed to the taxpayers on May 1, 1964.

Taxpayers' complaint against the Government arises from the fact that the amounts disallowed the corporation for utilities, telephone, depreciation of the houses, and board of labor, are the values ascribed by the Government to the lodging and board furnished the Wilhelms and the Dovers. They complain also that the Government allocated $376.55 for oil

and gas expenses to the car and improperly disallowed that expense.

It is the position of the Government that the Dovers and Wilhelms were the corporation and could not be its employees, and that the value of the food and lodging furnished to the taxpayers by the corporation was a constructive dividend. The Government contends that the food and lodging provided by the corporation was not provided primarily for the convenience of the corporation but rather for the joint convenience of the taxpayers and "their" corporation.

▄▄▄ The first question to be decided is the effect of the Section 1372 election by the Thirty-One Bar Ranch Company not to be subject to the payment of income tax, and of the consent of the shareholders thereto.

It is the Government's position that the effect of an election to be taxed under Subchapter S of the Internal Revenue Code is to convert a corporation into a partnership and to make the shareholders, in effect, partners. Counsel for the Government have cited no authority for this position and independent research by this Court has not found any to support it. An analysis of Subchapter S and its companion, Subchapter R, and of their legislative history leads to the contrary conclusion. 1954 U. S. Code Congressional and Administrative News, Pages 4752–4753, 5096–5101, 5333–5334; 1958 U. S. Code Congressional and Administrative News, Pages 4791, 4795, 4798, 4876–4878, and 5005–5014.

In the 1954 revisions of the Internal Revenue Code the Senate Finance Committee proposed new provisions, not included in the House bill, which would eliminate the influence of the Federal income tax laws in the selection of the form of organization adopted by certain small businesses. This was to be accomplished by giving certain corporations the option to be taxed as a partnership, and by allowing certain partnerships the option to be taxed as a corporation. Subsection (c) of the Senate's amendment provided that a corporation making the election would be considered a partnership for purposes of income taxes, and, with an exception not herein material, each shareholder would be considered a partner. Prior to the enactment of the Internal Revenue Code of 1954, the House struck the Senate's amendment which purported to give certain corporations an option to elect to be taxed as partnerships. The 1954 Code therefore, contained only the provision that certain partnerships could elect to be taxed as a corporation and they would be considered to be corporations and its partners would be considered shareholders for purposes therein specified. (Section 1361(c) I.R.C. of 1954.)

In 1958 Congress passed the "Technical Amendments Act of 1958" to correct unintended benefits and hardships and to make technical amendments. The House version of the bill would have repealed Section 1361 permitting partnerships to elect to be taxed as corporations. The Senate Committee on Finance, however, reinstated that section, and also added the new Subchapter S (Sections 1371–1377) permitting certain small-business corporations to elect that no corporate income tax be imposed on them, and to transfer the tax to the shareholders of the corporation. It is important to note that Section 1371 as proposed by the Senate Committee in 1958 and as finally passed by Congress does not provide that corporations should be treated as partnerships, nor that the shareholders should be considered partners. In contrast, the companion legislation (Section 1361) still provides that partnerships are treated as corporations if they elect to be taxed as such. It is logical to conclude, therefore, that Congress repudiated the proposal to convert corporations into partnerships.

Regardless of the Subchapter S election taken by the Thirty-One Bar Ranch, it is still the corporate income that is taxed, but it is taxed at the shareholder level instead of at the corporate level.

It is the corporation, not the shareholders, that elects not to be subject to the taxing of its income. The concept that the corporation earned its income is preserved. The record in these cases leaves no doubt that the Thirty-One Bar Ranch Company was incorporated according to law and in good faith. It alone conducted taxpayers' ranching operations. It was a separate and distinct corporate and taxable entity. It is admitted that it was qualified to take advantage of the election in Subchapter S. The inference that the taxpayers might have been motivated by tax considerations is unimportant as long as they did what the law permits. Cravens et al. v. Commissioner of Internal Revenue, 10 Cir., 272 F.2d 895 (1959). The determination of tax liability is not to be influenced by complete stock ownership and control by the taxpayers. Skarda et al. v. Commissioner of Internal Revenue, 10 Cir., 250 F.2d 429 (1957); see also, Noland et al. v. Commissioner of Internal Revenue, 4 Cir., 269 F.2d 108 (1959), cert. den., 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 121. There are no facts in these cases before me which dictate that the corporate entity should be disregarded and that the taxpayers be taxed as partners.

■■ The Government contends that the expenses of board and lodging of the Dovers and Wilhelms amounted to a dividend under Section 316, which should be included in the gross and taxable income of the plaintiffs (Section 61(a) (7), and 63).

The furnishing of board and housing by the Thirty-One Bar Ranch Company to its employees contains none of the characteristics of a dividend. The corporation did not provide board and housing for the benefit or personal pleasure of its employees; it was a bona fide transaction which the corporation supplied for all its employees, including those not related to the corporation and it was not an attribute of stock ownership; it involved a legitimate business purpose and was an ordinary and necessary business expense of the corporation.

When the corporation required its employees to live on the ranch in the facilities supplied by the corporation, it was using its own assets to further its own investment in the ranching business, and no taxable consequences should accrue to the plaintiffs thereby. Holsey v. Commissioner of Internal Revenue, 3 Cir., 258 F.2d 865 (1958). cf. W. D. Gale, Inc. v. Commissioner of Internal Revenue, 6 Cir., 297 F.2d 270 (1961); Louisville Chair Company, Inc. v. United States of America, 6 Cir., 296 F.2d 621 (1961); and see Sanders et al. v. Fox, 10 Cir., 253 F.2d 855 (1958).

The plaintiffs' uncontradicted evidence was that they were furnished the food and lodging as the employees of the corporation for the use and benefit of the corporation. They have sufficiently dispelled the presumption that the Government correctly found that the corporation distributed a dividend. Since the meals and lodging are not essentially equivalent to a dividend, Section 119 is applicable. Moreover, since two taxable entities, the corporation's and the shareholders' incomes, are involved, the "convenience of the employer" rule may be applied. cf. Commissioner of Internal Revenue v. Moran, 8 Cir., 236 F.2d 595 (1956). Section 119 provides that the value of any meals or lodging furnished to an employee by the employer for the convenience of the employer, shall be excluded from the gross income of the employee. There is no dispute that the meals were furnished on the business premises of the corporate employer as required by Section 119(1) and Regulations Section 1.119–1. The Government assessed additional tax against the plaintiffs on the theory that the board and lodging were not furnished for the convenience of the employer. The Government, however, allowed the deduction of the food and lodging supplied to its other employees, who were not shareholders of the corporation. Such double standard is unwarranted.

Taxpayers have made it abundantly clear that the employees were required to accept the lodging on the business

premises of the corporation as a condition of their employment (Regulations Section 1.119–1(b)), and that the expenses incurred by the corporation for the meals and lodging of its employees were incurred for the convenience of the employer, in relation to the business of the corporation and that they were ordinary and necessary in carrying on the ranching business. Brush Creek Ranch, where the Wilhelms lived, is described as a grass ranch; one that puts up very little hay and requires constant attention by persons experienced in grass ranch requirements, to keep the cattle alive. During storms and when there is heavy snow on the ground, the cattle must be fed daily; they must be moved, water holes must be kept open, and the cattle must be protected against the hazards of being trapped or falling into ravines. Employees must be near the cattle at all times to guard against thievery and loss through gates left open by trespassers. Mrs. Wilhelm testified: "You have to live with grass cattle".

The Home Place is used primarily for a haying and feeding type operation for wintering the cattle and calves. Severe winters and spring flood conditions, the calving, and wintering the calves require close surveillance. The Dovers and some other employees worked and lived on the Home Place in the year 1961.

The nearest community or business center is the town of Wheatland, approximately 24 miles from the Brush Creek Ranch, and approximately 26 miles from the Home Place. The headquarters of the Brush Creek Ranch and the Home Place are approximately 8 miles apart, but by road they are approximately 23 miles apart. Due to the terrain and weather conditions the only available way to go back and forth between the two places is by road.

■ There is no requirement in Section 119 that the employee be deprived of his free choice in lodging and boarding or that he be inconvenienced. There is no statutory provision that the employee may not exclude from his gross income the value of the food and lodging furnished by his employer because the employee, too, is convenienced. Olkjer v. Commissioner of Internal Revenue, 32 T.C. 464 (1959). Applying the tests in the Olkjer case, it is crystal clear that the taxpayers have overcome the presumption that the Government has properly applied the statutory allowance: no other housing and boarding facilities were available to the employees; the employees had no other choice but to accept the facilities furnished by the corporate employer; the food and lodging were furnished to the employees not only for the convenience of the employer, but they were indispensable in order to have the employees on the job at all times. Coyner et al. v. Bingler, 3 Cir., 344 F.2d 736 (1965); The United States Junior Chamber of Commerce v. The United States, Ct.Cl., 334 F.2d 660 (1964); Stone v. Commissioner, 32 T.C. 1021. The ranch could not be operated if the employees did not live and eat at the ranch. The requirements of Section 119 are satisfied and plaintiffs should have been allowed to exclude from their gross income the value of the food and lodging furnished to them by the Thirty-One Bar Ranch Company.

■ The Commissioner's disallowance of the taxpayers' claim for oil and gas and depreciation expenses of the car furnished them by the corporation is presumptively correct. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933). The burden is on the taxpayers to establish that they incurred the car expenses for business purposes on behalf of the corporation. This they failed to do. Plaintiffs did not submit records or proof of the purposes for which the car was used. Their testimony of the percentage of use of the car for business and for personal purposes was merely an estimate; it was "felt" that no more than ten percent of the use would be personal. Such general and conclusory testimony is insufficient to discharge their burden to prove that

the car expenditures were made or were proximately related to the business of the company. The Commissioner's determination, therefore, that the car was not used for business purposes must stand. All of the gas and oil expenses and the depreciation of the car were properly included by the Government in the plaintiffs' gross income.

For the foregoing reasons I find that the corporate entity of the Thirty-One Bar Ranch Company must not be disregarded for income tax purposes; that the plaintiffs are employees of the corporation; that the food and lodging were furnished plaintiffs by the corporation not as a dividend but rather primarily for the convenience of the corporation in operating its business; and that the plaintiffs have a right under Section 119 of the Internal Revenue Code of 1954 to exclude from their gross income the value of said food and lodging. I further find that the taxpayers did not sustain their burden of proving that the automobile furnished them by the corporation was used for business purposes as required by Sections 162 and 167 of the Internal Revenue Code of 1954.

I hold that the Government improperly disallowed the corporation's claimed deduction in the sum of $5,450.15 for utilities and telephone, board of labor, and depreciation for the houses, improperly added said sum to the plaintiffs' incomes, and erroneously assessed additional income tax against the plaintiffs accordingly. I further hold that the Government properly disallowed the deduction claimed by the corporation in the sum of $702.95 for depreciation and oil and gas expenses of the car, and said sum should be allocated to the plaintiffs' incomes and additional tax assessed against them accordingly.

This memorandum sufficiently states the findings of fact and conclusions of law of the Court. Further findings of fact and conclusions of law are not necessary. Appropriate judgment will be entered in conformity with this memorandum.