M. CARATAN and Carola Caratan, et al., Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 25215.

United States Court of Appeals, Ninth Circuit.

April 20, 1971.

Curtis Darling, Bruce Maclin, Bakersfield, Cal., for petitioners-appellants.

Johnnie M. Walters, Asst. Atty. Gen., Tax Div., Lee A. Jackson, William A. Friedlander, Jane M. Edmisten, Attys., Dept. of Justice, Washington, D. C., K. Martin Worthy, Chief Counsel, I. R. S., Washington, D. C., for respondent-appellee.

Before CARTER, WRIGHT and TRASK, Circuit Judges.

TRASK, Circuit Judge:

This is an appeal from a determination by the Tax Court that the fair market rental value of company-owned lodging furnished to the taxpayers without charge during the taxable years 1962, 1963 and 1964 was not excludable from taxpayers' gross income under Section 119(2) of the Internal Revenue Code of 1954 (26 U.S.C. § 119(2)). The Tax Court's decision is reported at 52 T.C. 960 (1969).

The sole question on appeal is whether the Tax Court's determination that the employee-taxpayers had failed to sustain their burden of proving that they were required to accept the lodging as a condition of their employment is clearly erroneous. We reverse.

The company, M. Caratan, Inc., is a California farming corporation which raises and sells grapes and other crops. The farm is composed of a number of non-contiguous tracts of land aggregating approximately 3,000 acres located near the town of Delano, California. During the taxable years in question, taxpayers owned 95% of the company's stock. They also served as corporate officers and directors and were employed by the company as supervisory personnel over the day-to-day operations of the farm.

The company had a policy, established by the taxpayers in their capacity as corporate officers and directors, that required supervisory and management personnel to reside on the farm. Company-owned lodging, strategically located on the farmland, was supplied free of charge for this purpose. The parties have stipulated that the fair market rental value of each of the three residences involved was $1,200 per year.

At the hearing before the Tax Court, the taxpayers called two witnesses: Luis Caratan, one of the taxpayers involved, and Stanley Willis, a farmer with long experience in the immediate area and familiar with taxpayers' operation.[1] The commissioner produced no witnesses. The testimony of taxpayers' witnesses indicated that certain kinds of work, such as grape dusting, tractor work, irrigation and repairs, are often done in the evening or at night. There was also testimony that, since things are happening on the farm 24 hours a day, someone responsible for making decisions must be available at all times.

Mr. Willis testified that, notwithstanding the fact that crew foremen are used, supervision and decision-making is the taxpayers' responsibility. The management structure is informal and lacking in the organizational hierarchy of the larger Kern County farming operations. According to Willis, in farm operations like the taxpayers', where there is little intermediate personnel between

---

1. Willis was a past president of the Kern County Farm Bureau, a director of the California Cotton Planting Seed Distributors, president of the Gold Ribbon Potato Company and a director of the Kern County Water District. He also has two farming operations in the area, one a sole proprietorship and the other a partnership.

management and field workers and where the workers are uneducated, unskilled, and often have language difficulties, supervision must be present on an almost constant basis. In fact, as a matter of efficiency, the supervisory personnel themselves may even have to lend a hand in the actual performance of the workers' duties. He stated that he lived on his farm, his partner lived on the partnership farm, "and we feel that we have to be there 24 hours * * * We irrigate 24 hours a day. There are things happening on our farms 24 hours a day * * *." R.T. 16.

Taxpayer Luis Caratan testified that he thought it would be impossible for the company to change its policy with regard to the on-farm residence of supervisory personnel. ("It is just part of the business to be where the business is.") Mr. Willis also indicated that on-farm lodging of supervisory personnel was common in the area. There was also testimony that the particular housing in question was not very elaborate —in fact, it was more akin to that usually supplied to intermediate farm personnel such as foremen than that furnished to corporate officers. This testimony of appellants was unimpeached and uncontradicted.

Section 119(2) of the Internal Revenue Code of 1954 excludes from the gross income of an employee the value of lodging furnished to him by his employer if the employee is required to accept such lodging as a condition of employment.[2] Treas.Reg. § 1.119–1(b) provides in part:

> "The requirement * * * that the employee is required to accept such lodging as a condition of his employment means that he be required to accept the lodging in order to enable him properly to perform the duties of his employment. Lodging will be regarded as furnished to enable the employee properly to perform the duties of his employment when, for example, *the lodging is furnished because the employee is required to be available for duty at all times* or because the employee could not perform the services required of him unless he is furnished such lodging." (Emphasis supplied.)

■ The commissioner's determination in such matters is presumptively correct. The taxpayers had the burden of proving to the Tax Court by a preponderance of the evidence that the commissioner's determination is erroneous. American Pipe & Steel Corp. v. C. I. R., 243 F.2d 125, 126–127 (9th Cir.), cert. denied, 355 U.S. 906, 78 S.Ct. 333, 2 L. Ed.2d 261 (1957); William J. Olkjer, 32 T.C. 464, 468 (1959). Upon the introduction of evidence by the taxpayers, provided that the evidence thus introduced was sufficient to support a contrary finding, the presumption of correctness disappeared. Potts, Davis & Company v. C. I. R., 431 F.2d 1222, 1225 (9th Cir. 1970).[3]

---

2. Section 119(2) of the Internal Revenue Code of 1954 (26 U.S.C. § 119) provides:
   "There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if—
   * * * * *
   (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.
   In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation."
   The requirements that lodging be furnished for the convenience of the employer and on the business premises were conceded by the commissioner in the Tax Court as having been satisfied.

3. The Commissioner need not, of course, come forth with any evidence if that introduced by the taxpayer clearly demonstrates that he is not entitled to the deduction sought. Potts, Davis & Co. v. C.I.R., 431 F.2d 1222, 1225 (9th Cir. 1970).

The Tax Court held that the taxpayers had not successfully met their burden of proving that the lodging furnished to them was "indispensable" to the proper discharge of their employment duties. The court was of the opinion that, since there were residential areas with available housing in Delano approximately ten minutes drive away from the houses occupied by taxpayers, the minimal time required to traverse such a distance could not seriously hinder the performance of any nighttime supervision which may have been necessary or the handling of any emergency which might have arisen. The court found that this case was not materially distinguishable on its facts from Gordon S. Dole, 43 T.C. 697 (1965), aff'd, 351 F.2d 308 (1st Cir. 1965) (*per curiam*), where it was held that the additional time needed to travel a couple of miles further from alternative private housing to a woolen manufacturing plant would not hinder certain supervisory personnel in the performance of duties that frequently required their presence at the plant at odd hours.

We conclude that the Tax Court's findings are clearly erroneous. On reviewing the entire record, we are " 'left with the definite and firm conviction that a mistake has been committed.' " Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960). Taxpayers met their burden of proof. The evidence presented by the taxpayers presented a *prima facie* showing that the lodging was furnished because the nature of their jobs required that they "be available for duty at all times." [4] Treas.Reg. § 1.119–1(b). Such a showing, absent contrary evidence submitted by the commissioner, requires that the lodging "be regarded as furnished to enable the employee properly to perform the duties of his employment," *i. e.*, as a condition of employment. Treas.Reg. § 1.119–1(b). It is not necessary to show that the duties would be impossible to perform without such lodging being available. The regulation presumes that, if the employee must be available for duty at all times, the lodging is, practically speaking, indispensable to the proper discharge of his duties.

The commissioner presented no evidence which tended to rebut taxpayers' showing that they were required to be available for duty at all times. In fact, the commissioner put on no evidence at all.

After stating the requirements of the law and the regulations, the Tax Court points out the proximity of Delano's residential area to the houses occupied by the taxpayers. The opinion continues:

> "*We do not see how* the short distance between Delano and the farming areas in question, or the minimal travel time required to traverse such distance, can seriously hinder petitioners' performance as officers and directors of the corporation had they resided in Delano. M. Caratan, Inc., had employed foremen and other supervisory personnel besides petitioners *who could have called* petitioners if an emergency arose requiring the petitioners' attention. Any nighttime supervision which may have been necessary *could similarly have been conducted by petitioners without difficulty* had they resided in the nearby city of Delano rather than on the farm. The mere fact that the employer has lodging available and it seems more desirable that the employee occupy the premises does not satisfy the condition contained in section 119 that the lodging be required as a condition of employment. Mary B. Heyward, [36 T.C. 739] *supra*." 52 T.C. at 963. (Emphasis supplied.)

All of these conclusions result in a business judgment by the court directly

4. In reaching this conclusion, we do not rely solely on the fact that corporate policy in this case requires the taxpayers to reside on the farm. We have reviewed the testimony presented to the Tax Court and found that it clearly shows that taxpayers, by the nature of their jobs, were required to be available for duty at all times.

contrary to the positive unimpeached and uncontradicted testimony of taxpayers' witnesses. No testimony was presented to the Tax Court to support such judgments expressed; the stipulation of facts does not support them; and no exhibits were introduced to justify or support such statements as, "[a]ny nighttime supervision which may have been necessary could similarly have been conducted by petitioners without difficulty had they resided in the nearby city of Delano rather than on the farm." The evidentiary requirements to back up such conclusions are not the subject of judicial notice and they simply were not otherwise established. The contrary view was clearly the testimony of experienced and knowledgeable witnesses. The court was not weighing evidence of the commissioner against evidence of the taxpayers as to what degree of availability is required on this farm; it was apparently weighing the evidence of the taxpayer against its own personal judgment of the requirements of a farming operation in Delano, California.

█ Admittedly, the Tax Court is not required to accept uncontradicted testimony by interested witnesses where credibility is in question, Wood v. C. I. R., 338 F.2d 602, 605 (9th Cir. 1964), but uncontradicted and unimpeached testimony adduced from interested witnesses, which is not highly or inherently improbable, cannot be disregarded merely because of the identity of the witnesses. Wener v. C. I. R., 242 F.2d 938, 944 (9th Cir. 1957); Nicholas v. Davis, 204 F.2d 200, 202 (10th Cir. 1953). There is no indication that the Tax Court had doubts as to Luis Caratan's and Stanley Willis' credibility or thought their testimony to be inherently improbable, nor would the record support such findings. As for Mr. Willis, it does not even appear that he was an interested party. Moreover, each witness's testimony corroborated the other. And the modest fair market rental value of the residences in question, stipulated to by the parties, clearly supports the testimony of both witnesses that the lodging was a practical necessity for the proper performance of their duties.

In light of the specific language of Treas.Reg. § 1.119–1(b), it does not appear that the mere availability of nearby housing,[5] so heavily relied upon by the Tax Court, was intended to require a different result. The language of the regulation which pertains to the feasibility of performance without the furnished housing (i. e., "because the employee could not perform the services required of him unless he is furnished such lodging") is joined disjunctively ("or") with the phrase concerning the requirement that the employee be available at all times. If the regulation intended that an employee whose duties required constant availability also must have no access to feasible alternative housing, the two phrases would have been joined conjunctively ("and").

To the extent that *Gordon S. Dole, supra*, relied upon by the Tax Court, is at odds with the position taken herein, we reject it as unsound in light of the plain meaning of the language in Treas.Reg. § 1.119–1(b).[6] We are more favorably persuaded by Coyner v. Bingler, 344 F.

5. It should be noted that the Tax Court's finding that Delano had housing available for sale or rent during the period in question rests upon very thin evidence. There is no basis in either the testimony presented at trial or the pretrial stipulation to support such a finding. We assume that the Tax Court was relying on general information relating to the price ranges for rentals and sales of apartments, duplexes and existing houses as contained in commissioner's Exhibits L, M and N. Those exhibits are industrial survey summary reports concerning Delano which were prepared by the Chamber of Commerce for the years 1961, 1965 and 1968. Those reports do not give a breakdown as to the number and type of housing units available at particular prices or the average vacancy rate during the period in question. Consequently, there is a certain amount of guesswork involved in determining whether there was suitable housing available for these particular taxpayers.

6. It should be noted that *Dole* was affirmed *per curiam* on the concurring

2d 736, 738 (3d Cir. 1965); and Harry Schwartz, 22 T.C.M. 835 (1963).[7] In *Coyner* it was held that the resident caretaker of a community cultural center which was almost constantly in use could exclude the lodging from his gross income because it related to the practical working necessity of performing his duties with any sort of efficiency. In *Schwartz*, the Tax Court held that the taxpayers, who were officers and employees of a family owned funeral business which served the Jewish community, could exclude lodging furnished as a matter of company policy from gross income because the business required close personal contact that had to be made available on a 24-hour per day basis.

In *Coyner*, if we follow the reasoning of the Tax Court below, it is difficult to see how a ten-minute drive would have seriously hindered the performance of the taxpayer's duties. Likewise, in *Schwartz*, a nightline to a residence nearby equally would have served the taxpayer's business needs. Yet, in both cases, exclusion from gross income was allowed. We are of the opinion that these results are consistent with the language of the regulation.

Had the commissioner introduced any evidence that the taxpayers were not required to be available for duty at all times a different result herein might be in order. But, on the basis of the record before us, taxpayers clearly met their burden of proof. The decision of the Tax Court is reversed.

opinion of Judge Raum of the Tax Court. 351 F.2d 308 (1st Cir. 1965). In his concurring opinion Judge Raum relied on the alternative ground in the majority's decision which held that the lodging furnished was not located on the business premises of the employer as required by Section 119(2).

7. Taxpayer also relies upon Wilhelm v. United States, 257 F.Supp. 16, 20–21 (D.Wyo.1966), where the supervisory employees of a cattle ranch, who were required to be available for duty at all times, were allowed to exclude from gross income the lodging furnished by their employer. The Tax Court below distinguished *Wilhelm* because there was no alternative housing available within a short distance of the job site. However, at the outset of its discussion on this point the court in *Wilhelm* stated:

"There is no requirement in Section 119 that the employee be deprived of his free choice in lodging and boarding or that he be inconvenienced. There is no statutory provision that the employee may not exclude from his gross income the value of the food and lodging furnished by his employer because the employee, too, is convenienced." 257 F.Supp. at 21.