DAVID M. STOCK and JANET B. STOCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stock v. Commissioner
Docket No. 8855-74.
United States Tax Court
T.C. Memo 1976-134; 1976 Tax Ct. Memo LEXIS 266; 35 T.C.M. (CCH) 596; T.C.M. (RIA) 760134; April 29, 1976, Filed ; *266 Petitioner and his former wife entered into a settlement agreement, which was incorporated in a divorce decree. In paragraph 9 of the agreement petitioner agreed to pay his wife one-half of his share of the proceeds from the sale of certain real estate over a 5-year period. In paragraph 11 of the agreement petitioner agreed to pay his wife $100 per month for a period of 5 years. Held, petitioner's payments under paragraph 9 of the settlement agreement do not qualify as periodic payments of alimony and are not deductible by petitioner. Held,further, payments made by petitioner to his former wife in excess of the $100 per month provided in paragraph 11 of the agreement were not paid pursuant to a legal obligation and are not deductible by petitioner. Held,further, petitioner failed to prove the business character of certain expenses for travel, entertainment, dues, and use of automobiles and is not entitled to deduct amounts in excess of the amounts allowed by respondent. Thomas A. Travis, Jr., for the petitioners. Terrell W. Dahlman, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioners' income *267 taxes for the taxable years 1970 and 1971, in the amounts of $2,055.29 and $1,705.62, respectively. After certain concessions made by the parties, the following issues remain for our consideration: (1) Whether certain payments made in 1970 and 1971 by petitioners to petitioner-husband's former wife were periodic alimony payments deductible under section 215, I.R.C. 1954; [1] (2) whether petitioners were entitled to deduct claimed business automobile expenses in 1970 and 1971 in excess of the amounts allowed by respondent; (3) whether petitioners were entitled to deduct expenditures for travel and entertainment in 1971 in excess of the amount allowed by respondent; and (4) whether petitioners were entitled to deduct expenditures allegedly incurred in 1971 for membership dues and entertainment expenses. [2] *268 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation together with exhibits attached thereto are incorporated herein by this reference. Petitioners are David M. Stock and Janet B. Stock, husband and wife. At the time of filing the petition herein their legal residence was Dug Gap Road, Dalton, Ga. Petitioners were married May 10, 1970, and filed joint Federal income tax returns for both calendar years 1970 and 1971 with the Internal Revenue Service Center, Chamblee, Ga. Janet B. Stock is a party herein solely by virtue of filing joint returns and hereafter petitioner will refer only to David M. Stock. Prior to his marriage to Janet, petitioner had been married to the former Shara L. Stock, now Shara L. Moss. Petitioner and Shara had two children by their marriage, Morris Craig Stock and Samuel Allen Stock. On or about July 1969 petitioner commenced a civil action against Shara in the Superior Court of Whitfield County, Ga., in which he sought a *269 decree of divorce. Shara, as a defendant in said suit, answered and counterclaimed against petitioner seeking relief by way of temporary and permanent alimony for herself and her children. In furtherance of her counterclaim, on October 29, 1969, Shara filed a "Notice for Record of Lis Pendens" with the Superior Court of Whitfield County, Ga. Included in the real property described in the notice of lis pendens was a parcel owned equally by petitioner and Joseph H. Ginsburg as tenants in common, which will hereinafter be referred to as the Stock-Ginsburg property. Sometime in 1969 petitioner and Ginsburg received an offer to buy the aforementioned real property. In order to effectuate a sale thereof, petitioner entered into an agreement with Shara dated November 29, 1969. Under the terms of this agreement Shara agreed to release her claim of lis pendens on the concerned parcel in return for which petitioner agreed to enter into an escrow agreement with the Bank of Dalton, Dalton, Ga. The escrow agreement, in pertinent part, provided that the bank was to hold in escrow the portion of the proceeds from the sale of the Stock-Ginsburg property which was due petitioner, pending a final *270 determination of the divorce proceeding. Under the escrow agreement the bank was to distribute the funds in accordance with the provisions of said final divorce decree. The Stock-Ginsburg property was thereafter sold pursuant to a contract of sale calling for a 29-percent downpayment and installment payments over a period of 5 years; pursuant to the aforementioned agreements, petitioner's share of the proceeds were held in escrow by the Bank of Dalton. On April 16, 1970, petitioner and Shara entered into an agreement (hereafter settlement agreement) which purported to represent a final agreement between the parties with regard to any and all legal rights existing between them as a result of their marital relationship including their respective property rights, rights of support and maintenance of the wife and the children, and all dower and homestead rights. Both parties were represented by counsel in negotiating and drafting the agreement. Under the terms of the agreement petitioner made various provisions for the support and maintenance of the children; he conveyed to Shara all of his interest in all items of personal property located in their home; and he agreed to convey to *271 Shara all his interest in two West Lakeshore Drive lots, without incumberance. In addition the agreement contained the following pertinent provisions: 5- As partial alimony, David M. Stock shall simultaneously with the execution of this agreement, convey his interest in and to all jointly held stocks, bonds and securities of any type whatsoever to Shara L. Stock. * * *
9- As further alimony, David M. Stock agrees to pay Shara L. Stock one-half of all proceeds as he has received and is entitled to receive from the sale of his one-half undivided interest in the tract of land which he owned jointly with Joseph H. Ginsberg, less the note payment to the Bank of Dalton in the amount of $10,794.86. Said conveyance being the subject matter of the escrow agreement made and entered into between the parties hereto as well as the Bank of Dalton, Dalton, Georgia, as escrow agent, on November 29, 1969, and being a part of the record in this case. It is stipulated that contemporaneously with the execution of this instrument that David M. Stock shall pay to Shara L. Stock one-half of the remainder of the down-payment on said property less the Bank of Dalton note, said one-half interest being one-half *272 of $2,864.63, or $1,432.32. It is further stipulated that on the first of December in the years 1970, 1971, 1972, 1973, and 1974, David M. Stock shall pay to Shara L. Stock as further alimony the following sums and amounts, to-wit: December 1, 1970, 1/2 of $10,613.50, or $5,307.25 December 1, 1971, 1/2 of $10,124.60, or $5,062.30 December 1, 1972, 1/2 of $ 9,634.70, or $4,817.35 December 1, 1973, 1/2 of $ 9,144.80, or $4,572.40 December 1, 1974, 1/2 of $ 8,654.90, or $4,327.45 It being stipulated that over the period and at the times specified David M. Stock shall pay to Shara L. Stock the total sum of $25,519.07. Further, as security for the said payments, David M. Stock does herewith transfer an one-half undivided interest in these promissory notes and security deed which he holds jointly with the said Joseph H. Ginsberg. *
* * *
11- David M. Stock shall pay alimony at the rate of One Hundred ($100.00) Dollars per month commencing on the first day of May, 1970 and continuing monthly thereafter to *273 Shara L. Stock for a period of five (5) years or until her remarriage, whichever occurs first, however, David M. Stock may terminate said alimony payments if he pays the full principal and interest amount owing to the Dalton Federal Savings and Loan Association on the property of the parties on Hardwick Circle in The City of Dalton, Georgia. Said alimony shall be deductible to David M. Stock for federal and state tax purposes and shall be included as income to Shara L. Stock for federal and state income tax purposes for such period of time as said alimony is paid. On the same day the settlement agreement was executed, April 16, 1970, a final judgment and decree granting a "total divorce" viz., divorce a vinculo matrimonii, was rendered by the Superior Court for the County of Whitfield, Ga. Said decree specifically incorporated the terms of the settlement agreement: The Court awards custody and support for the children of the parties and alimony for the wife in accordance with the agreement of the parties dated April 16, 1970, which agreement is hereby incorporated as a part of this judgment and each of the parties is directed to obey each and every provision thereof. The following *274 amounts were paid by petitioner to Shara in 1970 and 1971: 1970
Alleged Authority Source of Payment
for Payment
From down payment in
Article 9
Stock-Ginsburg sale
of settlement agreement
$1,432.32
From 1970 installment
Article 9
proceeds of Stock-
of settlement agreement
5,307.25
Ginsburg sale
Monthly alimony payments
Article 11
of settlement agreement
800.00
Total payments in 1970
$7,539.57 1971
From 1971 installment
Article 9 of
proceeds of Stock-
settlement agreement
$5,062.30
Ginsburg sale
Interest on installment
proceeds of Stock-
Ginsburg sale
970.85
Monthly alimony payments
Article 11 of
settlement agreement
1,800.00
Total payments in 1971
$7,833.15 On petitioner's income tax returns for 1970 and 1971, the above-indicated payments made to Shara were deducted in full as alimony payments under section 215. In a statutory notice dated August 6, 1974, respondent allowed only $800 of the deduction claimed for 1970 and $1,200 of that claimed for 1971 for the stated reason that payments claimed in excess of these amounts "represented non-deductible installment payments." At all times pertinent to this proceeding, petitioner was engaged in a cleaning supply business known as Stock's Sales and Services. It is stipulated *275 that there were no employees in the business during the years in question and that the business was primarily one of sales. On the 1970 and 1971 Federal income tax returns various expenses allegedly incurred in carrying on petitioner's business were claimed as deductions. In his August 6, 1974, statutory notice respondent disallowed some of these claimed deductions due to lack of substantiation. Certain concessions having been made by the petitioner, the following items remain at issue herein. Automobile Expenses
During the years in question petitioner owned two automobiles, a 1966 Mercury stationwagon and a 1964 Pontiac Catalina. On the tax returns for both 1970 and 1971 petitioner listed all expenses allegedly incurred on account of both automobiles, subtracted 10 percent thereof as personal expenses, and deducted 90 percent of the respective amounts as business expenditures. The amounts claimed on the returns were $2,269.55 for 1970, and $1,558.80 for 1971. Respondent allowed $1,276.03 and $921.68, respectively. The amounts in issue are $993.52 for 1970 and $637.12 for 1971. At trial petitioner conceded that the Pontiac Catalina was used exclusively by his son who was a *276 full-time student at a nearby junior college during the years in question. But petitioner testified that in addition to personal use, his son used the Pontiac for making deliveries and picking up supplies for petitioner's business. Petitioner kept no records indicating business and/or personal use of either automobile; his claimed deduction represented merely an unsubstantiated estimate of business use. Travel and Entertainment Expenses
For 1971, petitioner claimed a deduction of $236.16 for expenses allegedly incurred on a trip with his family to Nantahala Village, N.C. Petitioner testified that his 3-or 4-day visit was a combined business and pleasure trip and that "probably" 3 or 4 hours of each day were spent conducting business-related activities.Petitioner stated that none of the claimed expenses were related to personal expenses; however, no record was kept of expenses allegedly incurred during said trip. Petitioner has conceded that $110 of the claimed expenses are not deductible; the remaining amount in issue is $126.16. Dues Expenses
On petitioner's 1971 return $162 was claimed as a deduction for "Dues and subscriptions." At trial petitioner explained that the claimed *277 deduction consisted of $80 for annual Elks Club membership dues, $20 for use of the club swimming pool, and $62 for client entertainment expenses. Petitioner testified that he and his family made little personal use of the club facilities but was unable to estimate what percentage of time the club facilities were used for business-related activities as opposed to such personal use. Petitioner kept no records indicating when, for whom, or for what purpose the $62 allegedly allocable to entertainment of clients was incurred. The entire $162 claimed is in issue. OPINION The principal issue we must decide is whether certain payments made in 1970 and 1971 by petitioner to his former wife, Shara, were periodic alimony payments deductible by him under section 215. We must also decide whether petitioner may deduct certain unsubstantiated business expenditures in the years they were allegedly incurred. The payments claimed as deductible alimony were made pursuant to two separate paragraphs, paragraphs numbered 9 and 11, of the settlement agreement between David and Shara executed in contemplation of their divorce. Paragraph 9 of the settlement agreement provided that David agreed to pay *278 to Shara "as further alimony" (emphasis added) one-half of the gross proceeds [3] already received and to be received by David from the sale of his one-half interest in the Stock-Ginsburg property less an outstanding indebtedness of $10,794.86. The amounts of the payments and the dates thereof, being December 1 of each of the years 1970-74, were specified in the agreement. The dates coincided precisely with the dates on which petitioner was to receive installment payments from the sale of the property and the amounts were one-half of each payment petitioner was to receive. The total to be paid, including the initial payment, was stated to be $25,519.07. Paragraph 11 of the divorce agreement provided that David was to pay Shara alimony at the rate of $100 per month for a period of 5 years or until her remarriage, should that occur first. However, he could terminate his obligation under this paragraph by paying in full the indebtedness outstanding against the parties' former home which was transferred to Shara under another paragraph of the agreement. Petitioner paid to Shara the *279 amounts specified in paragraph 9 of the agreement in 1970 and 1971; petitioner also paid Shara $800 in 1970 and $1,800 in 1971 under paragraph 11 of the agreement. Petitioner claimed these amounts as deductions for alimony on his returns. Respondent disallowed all of the amounts paid under paragraph 9 and $600 of the amount paid under paragraph 11 for the year 1971. In order for petitioner to properly claim deductions under section 215[4] for the amounts paid pursuant to the settlement agreement he must prove said amounts were includable in Shara's income under section 71 in the years paid.
Section 71(a)(1) [5] provides that in the case of a divorce the wife's gross income will include periodic payments received in discharge *280 of the husband's legal obligation imposed under a divorce decree or a written instrument incident to such divorce, in recognition of the family or marital relationship of the parties. The payments made under paragraph 9 were incident to a decree and written instrument but it is for us to determine whether such payments were periodic and were made because of the family or marital relationship. We find it unnecessary to decide whether the payments made pursuant to paragraph 9 were made because *281 of the family or marital relationship or were part of an overall property settlement agreement because we hold that the payments were not periodic and thus could not be deductible in any event. [6]
At first blush it would appear that section 71(c) [7] *283 which deals with the definition of periodicity, would apply to the paragraph 9 payments and that subsection (c)(1) would preclude any possible finding of the required periodicity. Each of the installment payments described under paragraph 9 was required to discharge part of petitioner's obligation to pay Shara the total amount of $25,519.07 specified in the agreement over a period of less than 10 years. However, petitioner contends that he is saved from the application of this subsection by the regulatory exception created by section 1.71-1(d)(3), Income Tax Regs. Pertinent to this case the regulation essentially provides that even though the payments are to be made over a period of less than 10 years, they may still qualify as "periodic" payments if: (i) * * * (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the *282 economic status of either spouse, and (b) Such payments are in the nature of alimony or an allowance for support.
(ii) Payments meeting the requirements of subdivision (i) are considered periodic payments for the purposes of section 71(a) regardless of whether-- (a) The contingencies described in subdivision (i)(a) are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, * * *. First, petitioner argues that the payments are contingent within the meaning of (i)(a) because David's obligation to pay Shara was conditioned upon his receiving the installment payments from the purchasers of the Stock-Ginsburg property. We disagree with petitioner. We note that subsection (a) does not refer to such type of contingency. Moreover it is obvious from the agreement, even if not clearly articulated, that the parties did not intend the payments to be conditional. Furthermore, David agreed to transfer a one-half undivided interest in the promissory notes and security deed received on the sale of the Stock-Ginsburg property and consequently Shara would receive an undivided one-fourth interest in this property in the case of default by the purchasers. Thus, the possibility of default did not constitute a contingency. We also reject petitioner's argument that, *284 although the agreement is vague and ambiguous when examined paragraph by paragraph, when viewed as a whole it is clear that paragraph 9 should be read together with paragraph 11 and that the statements contained in paragraph 11 to the effect that the payments therein were intended to be deductible by David and includable by Shara and that the payments would stop at her remarriage were also applicable to the paragraph 9 payments.If the parties had intended these two paragraphs to be one, they would have so provided. [8] *285 Jean Cattier,17 T.C. 1461 (1952); Edward Bartsch,18 T.C. 65 (1952), affd. 203 F.2d 715 (2d Cir. 1953); Coker v. United States,327 F.Supp. 169 (D.Neb. 1971), affd. per curiam 456 F.2d 676 (8th Cir. 1972). Also, it is apparent from the provision in paragraph 9 that petitioner was to pay the gains tax on the sale of the property, that taxes were considered with reference to each paragraph separately, and that the provisions in paragraph 11 were applicable only to the payments made thereunder. We also have some doubt that the payments under paragraph 9 qualify as "payments * * * in the nature of alimony or an allowance for support" as required by subparagraph (i)(b) of the regulation. While paragraph 9 starts with the words "As further alimony," paragraph 5, under which petitioner agreed to convey his interest in jointly held securities to Shara, also starts with the words "As partial alimony;" yet both of these provisions smack more of property settlement agreements than provisions for alimony. [9] But even if the use of the word "alimony" was meaningful, we believe the reference was to lump sum alimony in both contexts. [10] *286 Next, petitioner argues that all of the contingencies referred to in section 1.71-1(d)(3)(i)(a) of the regulations are present in this case by virtue of Georgia law. Petitioner cites Ga. Code Ann., Title 30, sections 201, [11] *287 209, [12] and 220, [13] *288 (1969), as imposing contingencies of death of the wife, [14] *289 remarriage of the wife, and change in economic status of the husband, respectively. Petitioner contends that these contingencies render the paragraph 9 payments "periodic" within the meaning of section 71 and thus deductible to petitioner under section 215. We disagree. Petitioner has correctly interpreted section 1.71-1(d)(3) and its validity has been upheld. See Salapatos v. Commissioner,446 F. 2d 79 (7th Cir. 1971), affirming a Memorandum Opinion of this Court; George B. Kent, Jr.,61 T.C. 133 (1973). However, petitioner's interpretation of Georgia law is erroneous. First, Ga. Code Ann., Title 30, section 222 (1969) [15] specifically provides that there can be no modification of alimony where the award was made from the corpus of the husband's estate, as was the case here. *290 See Parker v. Parker,224 Ga. 54, 159 S.E. 2d 412 (1968); and Daniel v. Daniel,216 Ga. 567, 118 S.E. 2d 369 (1961). Furthermore, the settlement agreement specifically waived any right to modify the alimony award which waiver would be recognized by the Georgia courts. Eddings v. Eddings,230 Ga. 743, 199 S.E. 2d 255 (1973); Johnson v. Johnson,232 Ga. 103, 205 S.E. 2d 270 (1974); Grizzard v. Grizzard,224 Ga. 42, 159 S.E. 2d 400 (1968); and Ferris v. Ferris,227 Ga. 465, 181 S.E. 2d 371 (1971). Neither would the other contingencies of death of the wife or her remarriage apply to the payments under paragraph 9. Paragraph 9 makes no reference to such contingencies. This same situation was presented *291 to this Court in the case of George B. Kent, Jr.,supra at p. 138. At issue there was the application of an Arizona statute creating a contingency for alimony payments to a lump-sum alimony award. In that case we found that Arizona case law precluded the application of the statutory contingencies to payments of lump-sum alimony. Georgia case law does likewise. See Eastland v. Chandler,226 Ga. 588, 176 S.E. 2d 89 (1970), which held that an award of lump sum alimony granted a fixed and vested right in the recipient. [16] As a result *292 of the foregoing, the payments required by paragraph 9 were unconditional and did not fall within the above-cited regulatory exception. Consequently, said payments were not periodic, sec. 71(c), and thus were not includable in Shara's income, sec. 71(a)(1), nor deductible by petitioner, sec. 215. We next focus upon the payments made in 1971 by petitioner allegedly pursuant to paragraph 11 of the divorce agreement. Petitioner paid Shara $1,800 in 1971 and claimed an alimony deduction for the entire amount. Respondent disallowed $600 of that amount on the basis that the obligation imposed by paragraph 11 was to pay $100 per month and thus no more than $1,200 was includable in Shara's income for that year under section 71(a)(1). Petitioner's only argument with respect to this issue is that the payments called for under paragraph 11 were expressly contingent upon Shara's remaining single and thus periodic within the purview of section 1.71-1(d)(3), Income Tax Regs.
Petitioner apparently misunderstood the basis for the respondent's disallowance. [17] Section 71(a)(1) requires the payments made to the wife be pursuant to "a legal obligation." Under paragraph 11 petitioner was obligated *293 to pay $100 per month or $1,200 per year; Shara's inclusion and thus David's deduction was limited to that amount. The additional $600 paid by petitioner constituted nondeductible gratuity paid "without compulsion of any legal obligation arising out of a marital relationship," Frederick S. Dauwalter,9 T.C. 580, 585 (1947), and were not paid under a decree or written instrument; George R. Joslyn,23 T.C. 126, 133 (1954), affd. in part and revd. in part, Joslyn v. Commissioner,230 F. 2d 871 (7th Cir. 1956). Petitioner claimed a deduction of $126.16 [18] for travel and entertainment expense allegedly incurred in 1971 in connection with a "combined business and pleasure trip" to Natahala Village, N.C. The only evidence submitted by petitioner to support this claimed deduction was his own testimony that he called on the people who owned the establishment at which he stayed as well as some other people in nearby towns in an effort to sell janitorial *294 supplies. He claimed to have spent "abour 3 or 4 hours" of each day of the "3- or 4-day" trip engaged in such business activities. Petitioner's evidence is wholly inadequate to support the deduction claimed herein. Section 274(d), [19] *295 in pertinent part, specifically provides that no deduction shall be allowed under section 162 for any traveling expenses unless the taxpayer substantiates, by adequate records or by sufficient evidence corroborating his own statement, the amount of the expenses, the time and place of the travel, and the business purpose of the travel. [20] Petitioner has failed to meet his statutory burden with respect to these expenses. Bernard Goss,59 T.C. 594, 597 (1973). Similarly, with respect to the $162 claimed deductible in 1971 by petitioner as business expenses and identified on the 1971 return as "Dues and subscriptions," no evidence other than David's testimony was offered in support thereof. Section 274(d)(2) precludes a deduction of this alleged expenditure [21] *296 for lack of substantiation by adequate records or sufficient evidence corroborating David's statement. [22]
The last items for our discussion are the automobile expenses disallowed by respondent. Petitioner claimed $2,269.55 as a deduction for automobile expenses in 1970 and claimed $1,558.80 therefor in 1971. These amounts represented an allocation of the total cost allegedly incurred in operating two automobiles in both years on the basis that 90 percent of their use was business and 10 percent personal. Of these amounts respondent allowed $1,276.03 in 1970 and $921.68 in 1971 as deductible business expenses and disallowed the remainder as personal expenses. Petitioner has the burden of proving to what extent the automobile expenses incurred are properly allocable to business and personal purposes. Emil J. Michaels,53 T.C. 269, 275 (1969). David's testimony, which was the only evidence on this issue presented by petitioner, clearly indicates that the deductions claimed were based on mere estimates as he kept no records which would establish the amount of business use of the automobiles. Such evidence is not *297 sufficient to justify an allocation different from that made by respondent. Emil J. Michaels,supra: see Wilhelm v. United States,257 F. Supp. 16, 21 (D.Wyo. 1966). [23]
In accordance with our findings herein and with the stipulations and concessions of the parties, Decision will be entered under Rule 155.* Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated. ↩
2. The parties stipulated that petitioners had long-term capital gains in 1970 in the amount of $1,625 rather than $2,875 as determined by respondent. Petitioners conceded disallowance of $90.72 claimed for advertising expense and $110 of amounts claimed for travel and entertainment expenses in 1971. These and other adjustments will affect the allowable medical expense deduction and the amount of self-employment tax, all of which can be reflected in the Rule 155 computations.
*. Federal and State income taxes on Ginsburg-Stock sale above referred to shall be paid by David M. Stock and the parties agree to jointly file a 1969 State and Federal Income Tax Return.↩
3. David agreed to pay the income tax resulting from the gain on the sale of his interest in the property.↩
4. SEC. 215. ALIMONY, ETC., PAYMENTS. (A) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.↩
5. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule.-- (1) Decree of Divorce or Separate Maintenance.-- If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. See also sec. 1.71-1(b)(4), Income Tax Regs.↩
6. See William M. Haag,17 T.C. 55↩ (1951).
7. Sec. 71(c). Principal Sum Paid In Installments.-- (1) General Rule.--For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where Period For Payment Is More Than 10 Years.--If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.
8. While petitioner testified that he thought all the payments he made to Shara were to be deductible by him as alimony, he did not testify that the provisions contained in paragraph 11 actually applied to paragraph 9. Furthermore, an attorney who represented Shara in the negotiations and drafting of the agreement testified that taxes were given serious consideration in the negotiations as evidenced by reference thereto in several places in the agreement. Shara testified that she understood that she would have to pay tax only on the $100 monthly payments.
9. See, however, William C. Wright,62 T.C. 377↩ (1974), on appeal (7th Cir. Dec. 19, 1974). 10. See Roberson v. Roberson,199 Ga. 627, 34 S.E. 2d 836 (1945). See also Salapatas v. Commissioner,446 F. 2d 79 (7th Cir. 1971), wherein it is said: "The purpose of the statute is to create a reasonably definite rule by which to distinguish, at least in an approximate way, between payments by a divorced * * * husband to his divorced * * * wife which represent a division of income for current needs of living from payments which represent a division or transfer of capital, and to shift the impact of the income tax from husband to wife with respect to the amounts of the former type of payment."↩
11. Sec. 30-201. Definition. Permanent and temporary.--Alimony is an allowance out of the husband's estate, made for the support of the wife when living separate from him. It is either temporary or permanent. 12. Sec. 30-209.Jury may provide permanent alimony; factors in determining amount; effect of remarriage by wife.--The jury rendering the final verdict in a divorce suit may provide permanent alimony for the wife, either from the corpus of the estate or otherwise, according to the condition of the husband. In all cases where alimony is awarded to the wife, her separate estate and earning capacity, as well as any fixed liabilities of the husband for the support of minor children, shall be taken into consideration in fixing the amount. All obligations for permanent alimony to the wife, whether created by contract, verdict, judgment, or decree, the time for performance of which has not yet arrived, shall cease upon her remarriage unless otherwise provided in the decree. ↩
13. Sec. 30-220. Revision of judgment for permanent alimony; grounds petition; hearing.--The judgment of a court providing permanent alimony for the support of a wife or child or children, or both, shall be subject to revision upon petition filed by either the husband or the wife showing a change in the income and financial status of the husband. Such petition shall be filed and returnable under the same rules of procedure applicable to divorce proceedings. Such petition shall be filed in the same county in which the original judgment was granted. No petition may be filed by the wife under this law [§§ 30-220 through 30-225.1] within a period of two years from the date of the filing of a previous petition by the wife under this law. No petition may be filed by the husband under this law within a period of two years from the date of the filing of a previous petition by the husband under this law. After hearing both parties and the evidence, the jury, or the judge where a jury is not demanded, may modify and revise the previous judgment so as to provide for the wife, or child or children; or both, in accordance with the changed income and financial status of the husband, if such a change in the income and financial status of the husband is satisfactorily proved, so as to warrant such modification and revision. In the hearing upon a petition filed as provided herein, testimony may be given and evidence introduced relative to the income and financial status of the wife. 14. None of the statutes cited specifically mention death of the wife.Petitioner apparently draws his conclusion from the words "when living" contained in sec. 30-201, and from the holding of Buffington v. Cook,147 Ga. 681, 95 S.E. 214 (1918), which held that alimony ceases on the death of the wife. However, the holding of Buffington v. Cook,supra, when applied to "lump-sum" awards, was specifically rejected in Brown v. Farkas,195 Ga. 653, 25 S.E. 2d 411 (1943), and again in Roberson v. Roberson,supra.See fn.16, p.22, infra. Whether or not the Cook↩ case has any continuing validity in situations other than lump-sum alimony awards and whether or not the Georgia courts would agree with petitioner's interpretation of sec. 30-201, is not for us to decide.
15. Sec. 30-222. Same; revision proceeding applicable only to judgments for periodic payments.--Such an application, as hereinbefore authorized, can be filed only where the husband has been ordered by the final judgment in an alimony, or divorce and alimony suit, to pay permanent alimony in weekly, monthly, annual or similar periodic payments, and not where the wife, or child or children, or both, have been given an award from the corpus of the husband's estate in lieu of such periodic payment.↩
16. The court went on to describe "Alimony in gross" or in a lump sum as "in the nature of a final property settlement." While this characterization is not determinative of the question of whether the paragraph 9 payments were alimony or a part of a property settlement for Federal tax purposes, it does indicate that the Georgia cases holding that the contingencies, cited herein by the petitioner, do not apply to property settlements, would be applicable to the payments at controversy herein. See Morris v. Padgett,233 Ga. 750, 213 S.E. 2d 647 (1975); Davis v. Welch,220 Ga. 515, 140 S.E. 2d 199 (1965); Roberson v. Roberson,supra;Brown v. Farkas,↩ supra.
17. Petitioner made no reference to that portion of paragraph 11 which provided that he could satisfy his obligation thereunder by satisfying a certain outstanding indebtedness. We presume that the additional $600 did not extinguish said indebtedness.↩
18. The deduction actually claimed by petitioners was $236.26; petitioners conceded at trial that $110.10 was improperly claimed on their return.↩
19. Sec. 274 (d). Substantiation Reguired.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), * * *
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. * * *↩
20. See also sec. 1.274-5, Income Tax Regs.↩
21. David testified that the $162 claimed deductible consisted of $80 Elks Club dues, $20 fee for use of the Elk's Club swimming pool and $62 for entertainment expenses incurred at the Elks Club. All of these items are governed by the substantiation requirement of sec. 274(d)(2). See also sec. 274(a)(1)(B) with respect to the dues expense. 22. See also sec. 1.274-5, Income Tax Regs.↩
23. See also Clement V. Conole,T.C. Memo. 1971-111↩.