**UNITED STATES of America,
Plaintiff,**

v.

**Harry L. DONOVAN, Defendant.**

**Civ. A. No. 6104–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 24, 1969.

Morris B. Silverstein, Tax Division, Dept. of Justice, Washington, D. C., for plaintiff.

Richard R. Ryder, Richmond, Va., for defendant.

## MEMORANDUM OPINION

MACKENZIE, District Judge.

This is an action by the United States seeking to reduce to judgment unpaid wagering tax liabilities, interest and fraud penalties assessed against the defendant-taxpayer, Harry L. Donovan. The defendant asserts that he is not liable for the tax on the ground that the assessments were made without any ra-tional basis, and for the fraud penalty on the ground that his guilty plea to a charge of violating Section 7201 of the Internal Revenue Code, 1954, 26 U.S.C. § 7201, for willfully attempting to evade payment of the ten per cent (10%) excise tax on wagers cannot be a foundation for a civil fraud penalty in light of recent Supreme Court decisions.

■ First, tax assessments made by the Commissioner of Internal Revenue are presumptively correct and must stand until controverted by a preponderance of the evidence produced by the taxpayer. Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935). The only evidence produced by the taxpayer to show that the Commissioner's determination was without rational foundation was the testimony of Internal Revenue Special Agents who participated in the original investigation and the determination of the assessment. Their testimony indicated that the total assessment for each month was based on an average daily amount computed from numbers tickets available for six (6) days in January of 1960. These were the only days for which information was complete for the whole period. The agent testified, however, from his own observations of traffic during the entire period in question that the volume remained fairly constant.

It has been held that a taxpayer's failure "to keep books and records of his business operations gives the Commissioner the right to use the best evidence available to determine income." Hallabrin v. Commissioner of Internal Revenue, 325 F.2d 298 (6th Cir. 1963). The Court in *Hallabrin,* supra, found that evidence showing "that 5,000 no spot tickets were printed each week in 1955 and about the same number during the other two years. The testimony indicates that the tickets averaged about $1.00 * * * [The] assessments made by the Commission were 'necessarily largely in the nature of estimates.' They were reasonable estimates." 325 F.2d at 305.

■ In United States v. Washington, 251 F.Supp. 359, 361 (E.D.Va.1966), affirmed in part, reversed in part, 402 F.2d 3 (4th Cir. 1968), Judge Lewis found that where seized records reflected the total of defendant's gambling activities for four (4) days, the government would be justified in "using the average for this period as the average play for the 225 days in question on the ground that the four (4) day period included three low-play days and one high-play day." See also: O'Neill v. United States, 198 F. Supp. 367 (E.D.N.Y.1961). In the case at bar the testimony indicated that the six (6) day period covered by accurate records was typical of the whole period in question. The defendant's contention that the government had no rational basis is therefore without merit.

Secondly, in Moore v. United States, 360 F.2d 353 (1966), the Fourth Circuit held that the conviction of a taxpayer for willfully attempting to evade and defeat payment of income taxes was a basis for a finding of fraud as to the same years in a subsequent civil proceeding. In that case, a civil refund proceeding brought by the taxpayer, the fraud conviction was held to work a collateral estoppel on the issue of fraud. Defendant, however, urges that two subsequent Supreme Court cases, Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L. Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 (1968), preclude his liability for the fraud penalty.

The Supreme Court in *Marchetti*, supra, held that persons defending a criminal prosecution for failure to comply with the wagering tax requirements "with a proper assertion of the privilege against self-incrimination" cannot be criminally punished. The Supreme Court in *Grosso*, supra, similarly held that a defendant is not properly prosecuted for willful failure to pay the tax or conspiracy to evade its payment where payment would have required him to incriminate himself. Unless these two cases affect the government's assessment of the fraud penalty, then the defendant is liable.

■■ Neither *Marchetti* nor *Grosso* invalidates the obligation to pay the taxes; they merely hold that taxpayers cannot be criminally liable for failure to comply with tax requirements that would violate their privilege against self-incrimination. Neither case applies retroactively to invalidate the defendant's prior conviction on a plea of guilty. In addition, whether or not the government would be precluded from collecting fraud penalties in post *Marchetti* and *Grosso* cases in the face of a defense of the privilege against self-incrimination, in 1960, the assessment of fraud penalties was proper. The burden for establishing fraud for the purpose of enforcing the government's penalty assessment may be satisfied by showing that defendant admitted to willfully attempting to evade the excise tax in a criminal proceeding prior to *Marchetti*, supra, and *Grosso*, supra. Under these circumstances, judgment will be entered for the United States of America for the amounts sued for, reducing, however, the claim for August, 1969 from the claim of "amount outstanding" of $7,-694.84 to $238.00.

The attorneys for the United States of America will prepare a proper judgment order in accordance with this Memorandum Opinion.