**Richard D. WINCHELL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV. 82–0–17.**

United States District Court, D. Nebraska.

April 11, 1983.

Dean J. Jungers, Bellevue, Neb., for plaintiff.

Michael P. Haney, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

SCHATZ, District Judge.

### INTRODUCTION

This tax refund action concerns the excludability of the fair rental value of lodging furnished the plaintiff, Richard D. Winchell (hereafter taxpayer), by his employer, Bellevue College. The taxpayer duly filed federal income tax returns for the calendar years 1975 and 1976. Upon examination of said returns, the Commissioner of Internal Revenue determined (1) that the fair market value of the residence occupied by the taxpayer was $3,600 per year, and (2) that this sum constituted additional remuneration to the taxpayer which should have been included in his gross income for the taxable years in question. After the taxpayer paid the deficiency assessments resulting from this determination and his claims for refund were disallowed, the taxpayer timely filed the instant suit to recover the sum of $2,734.88, together with interest at the legal rate thereon and all other relief to which he may be entitled.

The Court has jurisdiction over the parties and subject matter of this case pursuant to 28 U.S.C.A. § 1346(a)(1), as amended. Trial was had to the Court, sitting without a jury, on February 24, 1983. This memorandum opinion constitutes the Court's factual findings and legal conclusions, in conformity with Fed.R.Civ.P. 52(a). After careful consideration of all the evidence, together with the briefs and arguments of counsel, the Court has concluded that plaintiff's complaint must be dismissed.

### FINDINGS OF FACT

1) Bellevue College (hereafter College) is an independent, four-year educational institution located at Wright Way and Galvin Road in Bellevue, Nebraska. The College currently enrolls about 2,700 students, nearly all of whom commute to the campus by car, and approximately two-thirds of whom attend evening classes. At the time of its

founding in 1965, the College purchased from seven landowners an eighty-two acre tract of land adjacent to Fontenelle Forest in northeastern Sarpy County. This property (hereafter east campus) was originally intended to serve as the site of the College's campus. However, as it became apparent that the College's successful future lay as a commuter rather than a residential-type school, the Board of Directors in 1966 purchased an urban site at Wright Way and Galvin Road, which was developed into, and remains, the College's main campus. The College additionally owns certain other parcels of land, including an industrial site and a former landfill, which may be referred to in passing, but need not be discussed herein.

2) The taxpayer was hired by the College as its president and chief executive officer in 1968, such employment continuing through the taxable years here involved. At the time he was named president, the taxpayer owned and lived in a residence located at 3064 South 74th Street, Omaha, Nebraska. Shortly thereafter, at the insistence of the Board of Directors, the taxpayer moved into a home owned by the College and situated near the center of the east campus. This residence, which has a street address of 804 Vannornam Drive, is approximately four miles distant from the main campus. During 1975 and 1976, the taxpayer did not pay rent to the College for his use or occupancy of the Vannornam Drive residence. The telephone number presently assigned to the taxpayer's residence (1) is listed on telephone company records as an alternate number for the College but is not so designated in the telephone directory; (2) serves as the emergency number for the College between the hours of 10 p.m. and 7 a.m.; and (3) has been provided to the Bellevue Police and Fire Departments for utilization in emergency situations. The taxpayer maintains two offices: one within his home at 804 Vannornam Drive, and one in an administration building on the main campus. Ordinarily, the taxpayer makes the five to seven minute drive from his residence to his office on the main campus seven days per week. He is usually present at the College during regular business hours

and leaves for home between 7 p.m. and 10 p.m., the precise time of departure depending, *inter alia*, on the heaviness of the taxpayer's workload, the presence or absence of college-related social functions and the number of conferences, if any, scheduled with students or faculty members. The taxpayer is theoretically "on call" around the clock and has, on occasion, been summoned to the main campus or other college-owned property at night to secure buildings, direct maintenance personnel, or consult with law enforcement officers in the aftermath of a burglary or disturbance.

3) In the execution of his responsibilities for overall supervision of the affairs of the College, the taxpayer, both during and after the taxable years in question, performed certain services for his employer at home. As the College's principal fund-raiser, the taxpayer entertained actual or potential benefactors, visiting dignitaries and community leaders in his residence. Less frequently, he hosted such activities as graduation receptions, cookouts and choral group programs. The taxpayer occasionally worked in the house on weekends, and held small meetings there with faculty or students for mixed business and social purposes. He sometimes used his residence telephone for business purposes after regular working hours. Primarily in earlier years, the taxpayer was required to oversee all property owned by the College, to watch over an operational sanitary landfill site, and to patrol the east campus in an attempt to discourage trespassing and detect forest fires.

4) From time to time throughout the period material to this litigation, the east campus, on which no classroom or dormitory building has ever been erected, was utilized as the site of certain college-related activities. These included: (1) outdoor art and science classes and workshops; (2) student picnics; (3) athletic events, facilitated by the presence of a baseball diamond directly across the street from the taxpayer's residence; and (4) college commencement exercises.

5) In 1974, the Board of Directors declared most of the east campus to be surplus to the needs of the College and decided to convert the property so declared into a residential development to be known as "College Heights." Primarily for tax reasons, the College then established, and transferred ownership of the College Heights property to, a separate entity called the Tierra Corporation (hereafter Tierra). Tierra was responsible for: (1) overall management of the College Heights development; (2) survey, street location and site preparation work; and (3) sale of individual lots to independent contractors and speculators. The sale of completed residences in College Heights was ordinarily handled by the Freeman Company, a Bellevue real estate firm. At the time of trial of this action, several vacant and unimproved lots remained to be sold. A total of sixty to sixty-five acres was ultimately developed into the College Heights "subdivision." The remaining twenty or so acres of the east campus were retained by the College and used for outdoor activities. With respect to the development of College Heights, the taxpayer, in concert with the Board of Directors: appeared at city council and planning board meetings to expedite the rezoning of lots; caused Tierra to be created; assisted in the formation of a Sanitary Improvement District; and supervised the project in a very general way.

6) The taxpayer's salary has always been paid directly by the College, and the taxpayer received no compensation from Tierra during the development of the College Heights residential project.

## CONCLUSIONS OF LAW

The sole issue in this tax refund suit is whether the fair rental value of the residence furnished by the College to its president, the taxpayer herein, is excludable from gross income under Section 119 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 119.

■ Gross income encompasses all income from whatever source derived, including but not limited to compensation for services. I.R.C. § 61(a) (1954), 26 U.S.C.A.

§ 61(a). If services are paid for in a form other than cash, the fair market value of the property or services accepted in payment must be included in the employee's income for purposes of computing his year-end tax liability. *Adams v. United States,* 585 F.2d 1060, 1063 (Ct.Cl.1978). Consequently, the fair rental value of the lodging furnished to the taxpayer is includable in his gross income unless specifically excluded under section 119. *Bob Jones University v. United States,* 670 F.2d 167, 173 (Ct.Cl. 1982).

Title 26, U.S.C.A. § 119 provides in pertinent part:

There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him, his spouse, or any of his dependents by or on behalf of his employer for the convenience of the employer, but only if—

\* \* \* \* \* \*

(2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.

Therefore, in order for employer-provided housing to qualify for the section 119 exclusion, each of the following three conditions must be met:

1) The employee must be required to accept the lodging as a condition of his employment;

2) The lodging must be furnished for the convenience of the employer; and

3) The lodging must be located on the business premises of the employer.

*Adams, supra; accord, Cox v. Chaco,* 650 F.2d 174, 175 (9th Cir.1981); *Commissioner v. Anderson,* 371 F.2d 59, 63 (6th Cir.1966), *cert. denied,* 387 U.S. 906, 87 S.Ct. 1687, 18 L.Ed.2d 623 (1967); *Boykin v. Commissioner,* 260 F.2d 249, 251 (8th Cir.1958). With reference to the exemption granted by section 119, it should be noted that "tax assessments made by the Commissioner of Internal Revenue are presumptively correct and must stand until controverted by a preponderance of the evidence produced by the taxpayer." *Bob Jones University, supra,*

670 F.2d at 174, *quoting United States v. Donovan,* 309 F.Supp. 152, 153 (E.D.Va. 1969); *accord, Caratan v. Commissioner,* 442 F.2d 606, 608 (9th Cir.1971).

Condition of Employment

■ Section 1.119–1(b) of Treasury Regulations states that an employee is required to accept lodging as a condition of employment if he is

required to accept the lodging in order to enable him properly to perform the duties of his employment. Lodging will be regarded as furnished to enable the employee properly to perform the duties of his employment when, for example, the lodging is furnished because the employee is required to be available for duty at all times or because the employee could not perform the services required of him unless he is furnished such lodging.

26 C.F.R. § 1.119–1(b) (1982).

In order to meet this test, it is necessary for the entity claiming the section 119 exclusion to show that the free employer-provided housing is integrally related to the duties of the employee. *Bob Jones University, supra.* "The determination of whether an employee is required to accept lodging as a condition of his employment involves an objective examination of the facts surrounding the furnishing of such lodging." *Id.; see United States Junior Chamber of Commerce v. United States,* 334 F.2d 660, 663 (Ct.Cl.1964).

■ Objective examination of all the facts and circumstances of the present case indicates that the taxpayer was not required to accept the residence at 804 Vannornam Drive in order to perform his duties properly. First, the nature of the taxpayer's position as president of the College did not realistically require that he be available for duty at all times. The taxpayer ordinarily worked at his office on the main campus during the day, and occasionally held office hours there in the evening, but was only infrequently called at his home at night to deal with emergency situations. *Cf. Caratan, supra,* 442 F.2d at 609–11 (supervisory personnel over the day-to-day operations of a 3,000 acre farm were required

to be on duty twenty-four hours per day). Second, there was no suggestion at trial that feasible alternative housing was unavailable at the time in question. *See Bob Jones University, supra,* 670 F.2d at 175. Third, the provision by the College of lodging to the taxpayer was not impelled by overriding considerations of prestige and "psychic significance." *Cf. Adams, supra,* 585 F.2d at 1063–64 (president of Tokyo-based subsidiary of American corporation was required to reside in housing of sufficiently dignified and prestigious surroundings to promote his effectiveness within the Japanese business community). Fourth, the taxpayer on the whole performed relatively insubstantial services for the College at home, such as: occasionally entertaining civic leaders and financial supporters of the College; infrequently hosting cookouts or holding meetings with faculty and students; and sometimes working on administrative matters in the evenings or on weekends.

In sum, the ability of the taxpayer to satisfactorily discharge his duties irrespective of whether he occupied employer-supplied housing, coupled with *de minimis* college-related activity carried on in the taxpayer's home, evidences the College's purpose to provide lodging so its president could be closer to the campus, "... and not because proximity was a *sine qua non* to performance of [his] duties." *Bob Jones University, supra.* This Court is, therefore, of the opinion that the taxpayer was not required to accept the residence furnished by the College as a condition of his employment.

Convenience of the Employer

Turning now to the "convenience of the employer" test, in *United States Junior Chamber of Commerce, supra,* the Court of Claims stated that "[t]here does not appear to be any substantial difference between the first two conditions of § 119: The 'convenience of the employer' test and the 'required as a condition of his employment' test." 334 F.2d at 663. Thus, this Court's finding that the taxpayer has not satisfied the "condition of employment" test "subsumes without more a failure to meet the

'convenience of the employer' test." *Bob Jones University, supra,* 670 F.2d at 176.

There is, however, additional reason for finding that the residence at 804 Vannornam Drive was not provided for the convenience of the College. "[T]he convenience of the employer test is satisfied where there is a direct nexus between the housing furnished the employee and the business interests of the employer served thereby." *Adams, supra,* 585 F.2d at 1064. As with the "condition of employment" test discussed above, the taxpayer's failure to meet the "convenience of the employer" test is grounded in the indirect and tangential role which the lodging provided by the College played in the accomplishment of its educational goals. *See Bob Jones University, supra.* Unlike the situation presented in *Adams,* the residence in question here (1) was not built by the College, (2) was not specially identified with the educational or athletic programs of the College, and (3) was not designed to accommodate substantial College-related activities. While educational and fundraising goals may have been collaterally served to some extent by the home furnished the taxpayer and the College business which transpired therein, a prime reason underlying the taxpayer's occupancy of 804 Vannornam Drive was simply that "the employer appear[ed] to have lodging available and it seem[ed] more desirable that the employee occupy the premises." *Bob Jones University, supra,* 670 F.2d at 174, *quoting Heyward v. Commissioner,* 36 T.C. 739, 744, *aff'd per curiam,* 301 F.2d 307 (4th Cir.1962). Consequently, the relationship between the housing provided to the taxpayer and the College's educational interests was insufficiently direct to meet the "convenience of the employer" test.

Business Premises

The final test with respect to excludability under section 119 is whether the lodging was on the business premises of the employer. Resolution of this question is largely factual and requires a commonsense approach. *Adams, supra,* 585 F.2d at 1065. The phrase "on the business premises" has

been construed as meaning: (1) living quarters that constitute an integral part of the business property, *Bob Jones University, supra,* 670 F.2d at 176; (2) a place where the employee performs some significant portion of his duties, *Anderson, supra,* 371 F.2d at 66, 67; and (3) premises on which the employer carries on a substantial segment of its business activities, *Adams, supra,* 585 F.2d at 1066. *See also Benninghoff v. Commissioner,* 614 F.2d 398, 399 (5th Cir.1980); *United States Junior Chamber of Commerce, supra,* 334 F.2d at 664–65; *Goldsboro Christian Schools, Inc. v. United States,* 436 F.Supp. 1314, 1321–22 (E.D.N.C. 1977). "[F]unctional rather than spatial unity is determinative of whether lodging is on the employer's business premises." *Bob Jones University, supra.*

Under the facts as established by the evidence of record, the residence owned by the College and located on the east campus fails to meet the above-listed criteria. First, the employer-provided housing is not geographically integrated with the business property of the College, which may be defined as "the school's physical facilities in which the teaching occurred." *Goldsboro Christian Schools, supra,* 436 F.Supp. at 1321. The house occupied by the taxpayer: (1) is situated in a residential development approximately four miles away from the College's classroom buildings, administrative offices and other educational facilities; (2) is located on a tract of land which in 1974 was declared to be surplus to the needs of the College; and (3) is not visible from the College's main campus. It cannot fairly be said that the lodging supplied to the taxpayer is closely identified with the interests of his employer. *Cf. Adams, supra,* 585 F.2d at 1066–67. Thus, the taxpayer's living quarters do not constitute an integral part of the College's business premises.

Second, no "significant portion of the taxpayer's duties were performed within the residence provided for his use." *Anderson, supra,* 371 F.2d at 67. Merely being "on call" around the clock would not, without more, justify such a finding. *Id.* As has previously been noted, the taxpayer

conducted only limited college business in his home, such as sometimes using his home office and telephone for work purposes, meeting with students or faculty, and hosting certain social events. "The occasional ... performance of work related duties at a residence provided by the employer does not constitute 'a significant portion of employee's duties,'" *Goldsboro Christian Schools, supra,* 436 F.Supp. at 1322, and is not sufficient "to elevate the off-campus housing to the status of being 'on the business premises' functionally for the purposes of section 119." *Bob Jones University, supra,* 670 F.2d at 177.

Third, the Court is not persuaded that the east campus may reasonably be characterized as premises on which the College carried on some substantial segment of its business activities. The business of the College is the education and training of its students, and those functions are conducted on the main campus located at Wright Way and Galvin Road. The mere fact that the east campus was sporadically utilized as the site of student picnics, outdoor art and biology classes, and athletic events is not determinative. Similarly, the taxpayer's alternative argument that, during 1975 and 1976, his residence was a part of the College's business premises because the College was then engaged in the "business" of developing the College Heights residential project, is without merit and requires no additional discussion.

To summarize, the lodging supplied to the taxpayer in the instant case was not unified functionally with the educational goals and business activities of his employer. The third statutory requisite for excludability, therefore, has not been met.

CONCLUSION

For the foregoing reasons, the fair rental value of the housing furnished to the taxpayer in 1975 and 1976 is not excludable from gross income under section 119 of the 1954 Code. Accordingly, a separate order dismissing the taxpayer's complaint on the merits, and directing that judgment be entered for the defendant, will issue contemporaneously with this memorandum opinion.