Virgil L. ERDELT and Elaine E. Erdelt, Plaintiffs,

v.

UNITED STATES of America, Defendants.

Civ. No. A1–87–010.

United States District Court, D. North Dakota, Southwestern Division.

Feb. 15, 1989.

Garry A. Pearson and Ronald F. Fischer, Grand Forks, N.D., for plaintiffs.

Brett Scott and Amy J. Sargent, Tax Div., Washington, D.C., for defendants.

MEMORANDUM AND ORDER

CONMY, Chief Judge.

In 1967 the Steele/Dawson school board purchased a house that came on the market. The house was only one block from

the school, and, while "not much of a house," was what the board had been hoping to buy. A small portion of the elementary school is visible from the kitchen window. A radio base station is located in the house, allowing communication with the district's school buses. The house has a market value somewhere in the $10,000 to $15,000 range.

In 1967 the board was also trying to hire Virgil Erdelt as a superintendent of schools. The board after several trips, including an overnight stay, finally succeeded in convincing Mr. Erdelt to take the proffered job. It is apparent from the deposition of Burton Johnson that the Board was dissatisfied with previous employees who treated the position as calling for a 40 hour week. Mr. Erdelt participates in the school district and community activities on a 365 day work year—and has done so for 22 years.

Mr. Erdelt and his family have lived in the house since he accepted the position.

The hiring contracts are pre-printed forms. No written reference to the house appears, and no specific mandate requiring occupancy as a condition of employment was ever clearly stated. Mr. Erdelt describes the situation as "I simply assumed that I was supposed to live there. They told me it had been purchased for the use of the chief administrator. It would have been an insult to them had I not moved in." There is no magic to the specific location, or to the specific house itself. Any of the comparable homes in the area would serve as well, and any one of them might have been purchased instead had one come up for sale during 1967.

Mr. Erdelt's description of the circumstances surrounding his hiring strike the court as clearly authentic. No requirement of occupancy needed stating. Mr. Erdelt's family needed a home, the school district owned an available house and in all probability no other house was even available in a community of 850 residents.

The "to whom it may concern" statement of Burton Johnson dated April 12, 1985, which was admitted into evidence, also has a ring of absolute authenticity. The statement provides:

> at the time we purchased this house it was extremely difficult for our school personnel to find adequate housing in the City of Steele. In order for us to be competitive in hiring a superintendent we decided that purchasing a house for teacherage was necessary."

Mr. Erdelt appears to be a superb rural district superintendent. He is available to everyone, virtually all the time. By his presence and availability, he insulates the school board from controversy. He makes the physical plant available to the community at large. He is physically present in the community. The court also notes that approximately ¼ of the school district employees do not live in Steele or Dawson—an even smaller community.

The Internal Revenue Service reviewed Mr. Erdelt's situation (and roughly 50 similar situations) and included the reasonable rental value of the house into the income computation. The resulting increase in tax was paid under protest and this action was then commenced for a refund. The issue before the court is whether the value of the living quarters should be included in the gross income of Mr. Erdelt. Under the Internal Revenue Code gross income encompasses all income from whatever source derived. 26 U.S.C. § 61(a). The value of lodging is to be included in gross income unless excludable under Treasury Regulation 1.61–2(d)(3) wherein it states:

> The value of living quarters or meals which an employee receives in addition to his salary constitutes gross income unless they are furnished for the convenience of the employer and meet the conditions specified in section 119 and the regulations thereunder.

Section 119 of the Code provides in pertinent part as follows:

> There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him, his spouse, or any of his dependents by or on behalf of his employer for the convenience of the employer, but only if—
>
> (1) ...

(2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.

The questions presented under section 119 are whether the house is: (a) furnished for the "convenience of the employer."; (b) located on the business premises of the employer; and (c) required to be occupied by the employer as a condition of employment. In order for the house to qualify for the 119 exemption these three factors must be satisfied. *Winchell v. United States,* 564 F.Supp. 131 (D.Neb.1983) *aff'd* 725 F.2d 689 (8th Cir.1983). The treasury regulations contemplate an employer forcing lodging upon the employee.

"You will live in the servants quarters and take your meals with the domestic staff unless specifically invited to formal occasions in the great hall." or

"as building superintendent, you are required to live in the basement unit and be on call for emergencies at all times unless arrangements have been made for cover in your absence." or (as the court finds in this case)

"Please come to work for us. As an added incentive, we furnish living quarters for you and your family in exchange for some duties outside of normal hours and on weekends."

## "CONVENIENCE OF THE EMPLOYER"

■ "The convenience of the employer test is satisfied where there is a direct nexus between the housing furnished the employee and the business interests of the employer served thereby." *Bob Jones University v. United States,* 670 F.2d 167, 176, 229 Ct.Cl. 340 (1982) *citing McDonald v. Commissioner,* 66 T.C. 223 (1976). Counsel for both sides have sought to demonstrate that the house is used for business purposes, meetings, a quiet haven for concentrated work away from the distractions of the office, etc. The court finds that for such purposes the house could be located miles away from the school complex. No one can say that a response time to an emergency call of 30 seconds is critical as opposed to 10 minutes required to drive down the interstate from Dawson. Nor is the references to "convenience" for purposes of seeing if the furnace is functioning of any significance.

The court does find, however, that the residence of Mr. Erdelt in the house owned by the district is clearly for the convenience of the employer. The "convenience," or "necessity" if preferred, lies in the ability of the district to hire superbly motivated people like Mr. Erdelt, and by locating him in close proximity to the school, help to make him available for the daily interaction between the community and the school staff and physical plant. In a community the size of Steele, the furnishing of housing appears to be necessary in order to obtain the physical presence and community interaction required of a good superintendent. It is also apparent that a paragon might be found who could perform as well without the housing—or that a less motivated individual might be unsatisfactory even with the housing, but the court finds a reasonable nexus between the furnishing of housing and the hoped for performance of duties by the superintendent.

## "ON THE BUSINESS PREMISES"

■ Turning to the "business premises" test the court in *Adams v. United States* indicated that a determination of whether the lodging is "on the business premises" is a factual determination requiring a commonsense approach. *Adams,* 585 F.2d 1060, 1065, 218 Ct.Cl. 322 (1978). This has been construed to include (1) living quarters that constitute an integral part of the business property; (2) premises on which the employer carries on some substantial segment of its business activities; and (3) a place where the employee performs some significant portion of his duties. *Winchell,* 564 F.Supp. at 136 *citing Bob Jones University,* 670 F.2d 167, 229 Ct.Cl. 340 (1982); *Commissioner v. Anderson,* 371 F.2d 59 (6th Cir.1966); and *Adams,* 585 F.2d 1060, 218 Ct.Cl. 322 (1978).

One assumes that this includes each of the parcels of land and buildings used by the district. The schools, athletic facilities, the maintenance shops, the bus garages,

and the administrative offices all could constitute the "business premises." The district itself is some 450 square miles in area, approximately 15 miles wide and 30 miles long. The house and lot compressing the "teacherage" are one block away from the school facility. The record would indicate that the district operates only one physical site, as opposed to the multiple sites of other districts.

This court adopts a wonderful example of circular reasoning in determining that the house (lodging) is on the business premises of the employer. The employer owns the premises. The employer is charged with the provision of educational opportunities to children. The court has determined that the occupancy of the premises by the superintendent has a necessary and reasonable connection with the performance of official duties (although more subtle than "inspection after a hail storm") and therefore the "teacherage" is itself a part of the business premises of the employer.

"RESIDENCE REQUIRED AS A CONDITION OF EMPLOYMENT"

■ The final test is whether M₁. Erdelt was required to accept the lodging as a condition of employment. The Treasury Regulations provide that an employee is required to accept lodging as a condition of employment if he is required to accept the lodging in order to enable him properly to perform the duties of his employment. 26 C.F.R. § 1.119–1(b). This requires an objective examination of the facts and circumstances of the employment. *Bob Jones University*, 670 F.2d at 174. The subjective intentions of the employer and employee are not controlling. *Id.* Moreover, the provisions of the employment contract are not determinative. 26 U.S.C. § 119(b)(1).

An objective examination of the facts and circumstances of the present case indicates that Mr. Erdelt was required to accept the lodging as a condition of his employment if he was going to perform his full duties efficiently and as required by the nature of the position and the uniqueness of the school district itself. As the court has already noted Mr. Erdelt has

been available to the entire district at all times. By his presence and availability near the school, he is able to make the facilities available to the community at large when needed. Finally, by his presence he is available in emergency situations and is able to watch over the plant. The court holds that a review of the totality of the circumstances indicates that the requirement of residence as a condition of employment is satisfied.

The court recognizes that its position is possibly reaching the extreme limits of the exclusion of section 119, but finds that if the exemption is to have any validity a stringent test is unworkable.

Food and lodging furnished by an employer clearly have a value. Common sense and fairness would appear to indicate that some appropriate value computation be included, unless the lodging in fact is duplicative of other housing available to the taxpayer. Contrast "My employer requires that I live in this room during the week. On weekends I go to the home where my wife and family live," with "My employer requires that my wife and family live here with me in the house that the employer furnishes." Common sense would indicate that by furnishing housing, the employer can negotiate a lower salary. The higher salary, absent housing, would be taxable income. Congress has apparently determined that a person required to give up the freedom of choice and the sometimes dubious honor of home ownership is entitled to such an exclusion. The wisdom of the exclusion is not apparent, but a knowledge of the circumstances resulting in the exclusion is also not present.

To summarize the court's position: No "bright line" test is adopted. If for ease of administration or comparative justice, an appellate court should wish to determine that: (1) "upon the business premises" should be testable by a requirement of contiguity with central facility, and or (2) "convenience of the employer" should be construed to relate to the performance of duties virtually impossible of performance by one residing other than in the lodging provided; this court would welcome the

guidance for future cases. If the exclusion has legitimacy when applied to any situation, it appears to this court that in recognition of the problems of small rural school districts, paying administrative salaries with public funds, it is appropriate that the provision of "tax free" lodging as a "perk" is appropriate in lieu of higher salary structure, and is an appropriate extension of the legislative intent.

Based on the foregoing, it is hereby ORDERED that judgment be entered for the Plaintiff in the amount of $1,179.18 with the appropriate rate of interest thereon.